Joseph **SCHEER**, Appellant,

v.

Wayne K. **PATTERSON**, Warden, Colorado State Penitentiary, Appellee.

No. 695–69.

United States Court of Appeals,
Tenth Circuit.

July 15, 1970.

Rehearing Denied Aug. 21, 1970.

Thomas T. Crumpacker, of Wood, Ris & Hames, Denver, Colo., for appellant.

Michael T. Haley, Asst. Atty. Gen., Denver, Colo. (Duke W. Dunbar, Atty. Gen., and John P. Moore, Deputy Atty. Gen., Denver, Colo., on the brief), for appellee.

Before PHILLIPS, BREITENSTEIN and HILL, Circuit Judges.

HILL, Circuit Judge.

This appeal is from the order denying appellant's petition for a writ of habeas corpus after an evidentiary hearing. Appellant, in state custody, seeks habeas corpus relief on the grounds that his guilty plea to a charge of first degree murder was not voluntary.

Under undisputed facts appellant Scheer is serving a life sentence in the Colorado State Penitentiary which was imposed after he entered a plea of guilty to the first degree murder of an off-duty policeman. The murder occurred during an attempted robbery of a Denver tavern by three armed and masked men. Subsequently, appellant Scheer and one Jerry Stilley were arrested and charged with the felony-murder which under Colorado law is first degree murder.

The state trial court appointed two experienced criminal lawyers to represent Scheer. At his arraignment, Scheer entered a plea of not guilty by reason of insanity; Stilley likewise pled not guilty. A trial was held on the question of Scheer's sanity and he was found to be legally sane. Several months thereafter, on November 27, 1962, the case against Scheer and Stilley came on for trial. On the morning of November 27 and before the trial commenced, the attorneys for the accuseds asked to meet with the state trial judge in chambers. At that time and in the presence of the accuseds and the prosecution, the state trial judge was advised that the accuseds wished to withdraw their pleas and enter pleas of guilty. In addition, the trial judge was informed that the prosecution agreed that the evidence against the accuseds was circumstantial and therefore under Colorado law the jury could not impose the death penalty. The trial judge questioned both Scheer and Stilley concerning the voluntariness of their decision to enter guilty pleas. Thereafter in open court, Scheer changed his plea to guilty, and in response to questioning by the judge, stated that he made the plea knowingly, that he waived his defenses, waived his right to a jury trial, and he was doing this of his own volition and was not being coerced.

After Scheer pled guilty, the trial judge empaneled a jury pursuant to C. R.S.1963, 40–2–3(3) for the purpose of

determining what punishment should be imposed. Under the existing statute, murder in the first degree was punishable by life imprisonment or death, but the statute provided further that no person should suffer the death penalty "who shall have been convicted on circumstantial evidence alone." The district attorney addressed the court and jury on the evidence stating that the evidence against Scheer was circumstantial. Accordingly, the jury was instructed to fix Scheer's penalty at life imprisonment.

Scheer's guilty plea precluded a direct appeal of the conviction and sentence, but pursuant to Rule 35(b) of the Colorado Rules of Criminal Procedure, he filed a motion in the state trial court seeking to withdraw his guilty plea. The state trial court upon denying Scheer's motion ruled *inter alia* that Scheer entered his guilty plea voluntarily. The Colorado Supreme Court affirmed the lower court.[1] Appellant then filed his present petition for habeas corpus relief in the United States District Court, and an evidentiary hearing was held on the question whether Scheer's plea was voluntarily entered with knowledge of the consequences.

At the evidentiary hearing, the above undisputed facts were developed. In addition, Scheer and the two attorneys who represented him at the time of his plea testified in detail concerning the events surrounding Scheer's decision to change his plea. The testimony pertinent to the issues on this appeal shows that in the course of Scheer's sanity trial Scheer's attorneys learned that he had made several statements to police officers. The statements were equivocal but with little effort they could have been read as admissions by Scheer that he was connected with the robbery. Thereafter, through the cooperation of the District Attorney, Scheer's attorneys

learned more and more about the prosecution's case, and they came to realize how strong the evidence was against Scheer. Progressively, Scheer's attorneys formed the opinion that there was virtually no chance for an acquittal; and since there could be no verdict on a lesser included offense, the only other alternative was a verdict of first degree murder. Thus, their concern turned to whether there was any direct evidence against Scheer which would warrant submitting the issue of the death penalty to the jury.

Determining whether the evidence against Scheer was direct or circumstantial and thus whether the death penalty would be precluded under C.R.S.1963, 40–2–3(3) posed a problem for Scheer's attorneys. The problem was created mainly because the law of Colorado was unsettled whether the death penalty could be invoked merely if there was direct evidence on any element of the crime or whether the death penalty could be invoked only if all the elements of the crime were shown by direct evidence.[2] In Scheer's case, other than connecting him with the robbery and shooting, there was no question but that the elements of the crime could be proved by direct evidence.[3] Scheer's attorneys felt that the state trial judge could take the view that this amount of direct evidence was sufficient to warrant submitting the question of the death penalty to the jury.

Scheer's attorneys concluded that the issue of the death penalty could possibly be submitted to the jury because there was evidence linking Scheer to the crime which arguably was direct. Scheer's attorneys regarded his statements to the police as borderline admissions which could be construed as admissions directly showing Scheer's connection with the crime. Moreover, the prosecution had a witness who would

1. Stilley v. People, 160 Colo. 329. 417 P. 2d 494 (1966).

2. *Cf.* Wechter v. People, 53 Colo. 89, 124 P. 183 (1912).

3. For example, there were numerous eyewitnesses who could testify that the shooting and death occurred during an attempted robbery.

testify to overhearing Scheer and Stilley planning the robbery, and Scheer's attorneys thought this evidence might also be construed as direct evidence linking Scheer to the crime.

On the basis of the above, Scheer's attorneys felt that there were reasonable grounds to doubt whether the prosecution's evidence was circumstantial within the contemplation of C.R.S.1963, 40–2–3(3) so as not to warrant a death penalty. They accordingly advised Scheer well in advance of the trial date that they doubted he would be acquitted and that they believed there was a substantial question whether the jury would be precluded from imposing the death penalty. They further testified that they were fully prepared to go to trial and present a defense on November 27, 1962, if Scheer did not want to change his plea to guilty.

The trial court found that there was a substantial question regarding the meaning of "circumstantial evidence alone" as used in C.R.S.1963, 40–2–3(3); this gave Scheer's attorneys a reasonable basis to consider the possibility of a death sentence in the light of the prosecution's evidence; Scheer was capable of making a rational decision to plead guilty; the District Attorney's statement to the trial court and jury that there was no direct evidence of Scheer's guilt was a part of a bargain between Scheer and the District Attorney; and the bargain was that Scheer would plead guilty and in return the District Attorney would give up his argument that there was direct evidence against Scheer warranting the death penalty. For these reasons, the trial court deemed Scheer's plea to be voluntary and denied habeas corpus relief.

On appeal, Scheer concedes that the findings of fact are supported by the record. However, he attacks the legal conclusions and claims that his guilty plea was invalid and not voluntary because it "was produced by fear of receiving the death penalty, which resulted from (1) advice that he might receive the death penalty if he went to trial which was not justified legally, and (2) constitutionally impermissible burdens placed on him by the Colorado statute and procedure under which he was convicted."

At the outset, we note that appellant Scheer had exhausted his state remedies and is properly in the Federal Courts. We agree with the District Court Judge that in view of the Colorado State Courts' previous decisions ruling against Scheer's motion, it would be a futile thing to require him to return to those courts once again for relief.[4]

Appellant first argues that the District Court Judge erroneously concluded that there was a real question regarding the meaning of "circumstantial evidence alone" as used in the Colorado murder statute which gave Scheer's counsel a reasonable basis to consider the possibility of a death sentence. Appellant cites Colorado Supreme Court decisions defining "direct" and "circumstantial" and concludes that Scheer's counsel mistakenly advised him. Presumably appellant raises this point to show that contrary to the trial judge's conclusion, Scheer's guilty plea was not intelligently made and therefore invalid.[5]

However, we cannot agree with appellant that Scheer was mistakenly advised because we cannot agree that his attorneys had no reasonable basis to advise Scheer of the possibility of a death sentence. Under the Colorado cases which define direct and circumstantial evidence and which discuss such evidence in relation to the murder statute, it appears arguable to us that the evidence allegedly connecting Scheer with the crime was direct. But even if we thought that the evidence connecting

---

4. Canales v. Baker, 406 F.2d 685 (10th Cir. 1969).

5. "[G]uilty pleas are valid if both 'voluntary' and 'intelligent.'" Brady v. United States, 397 U.S. 742, 747, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970).

Scheer with the crime was obviously circumstantial, that still would not end the problem. Appellant has not cited nor have we found any Colorado case which answers the question whether there must be direct evidence of each element of the charged crime before the jury may consider a death penalty. Absent authority on that question, C.R.S.1963, 40–2–3(3) could have reasonably been read to mean that any direct evidence on any element of the crime is sufficient to submit the question of life imprisonment or death to the jury. Granting that there was at least this much direct evidence against Scheer, his attorneys had a reasonable foundation for advising him that the death penalty was a real possibility.

Of course, until the Colorado Supreme Court determined the meaning of "circumstantial evidence" in the murder statute, Scheer could not know precisely whether the prosecution's evidence was sufficiently direct to warrant the death penalty. But this uncertainty does not mean his plea was unintelligently made and invalid.[6] Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) teaches that a plea of guilty is valid if the accused is competently advised with respect to the then existing law regardless of the later pronouncements of the courts. Since Scheer was advised by experienced counsel and was accurately informed of the relevant circumstances and the likely consequences of his plea, the record supports the conclusion that Scheer's plea was intelligently made.

Appellant next asserts that his plea was involuntary because constitutionally impermissible burdens were placed on him by the Colorado statute and procedure under which he was convicted. In substance, appellant's contention is that he was induced into accepting the District Attorney's plea bargain in order to escape the death penalty and that this was an impermissible pressure on him to plead guilty. Appellant places primary reliance on United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), wherein the Supreme Court invalidated the death penalty provision of the Federal Kidnapping Act, 18 U.S.C. § 1201. The statute in Jackson provided for a potential death penalty in cases tried to a jury, but the death penalty was not provided for in cases tried to a judge or in cases where the defendant pleaded guilty. The Supreme Court found that the death penalty provision imposed an impermissible burden upon the exercise of the right to demand a jury trial and the right not to plead guilty. Appellant argues that under the reasoning of United States v. Jackson, supra, his plea was involuntary because he was pressured by the fear of the death penalty and the promise of leniency. The fallacy of this argument is that United States v. Jackson, supra, did not hold as a matter of law that all guilty pleas encouraged by fear of a possible death sentence are involuntary or invalid.[7] On the contrary, whether a plea was entered voluntarily is a question of fact and all matters which bear thereon must be considered.[8]

Scheer's claim that his guilty plea was involuntary is essentially identical to the claim asserted in Brady v. United States, 397 U.S. 742, 750, 90 S.Ct. 1463, 1470, 25 L.Ed.2d 747 (1970): "that it violates the Fifth Amendment to influence or encourage a guilty plea by opportunity or promise of leniency and that a guilty plea is coerced and invalid if influenced by the fear of a possibly higher penalty for the crime charged if a conviction is obtained after the State is put to its proof." The Supreme Court rejected this contention

6. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970).

7. Runge v. United States, 427 F.2d 122 (10th Cir. 1970).

8. Brady v. United States, 404 F.2d 601 (10th Cir. 1968), aff'd 396 U.S. 809, 90 S.Ct. 86, 24 L.Ed.2d 63 (1970).

saying, "[A] plea of guilty is not invalid merely because entered to avoid the possibility of a death penalty." 396 U.S. at 755, 90 S.Ct. at 1472. Hence an otherwise valid plea is not involuntary because induced by defendant's desire to limit the possible maximum penalty to less than that authorized if there is a jury trial.[9]

■ By a parity of reasoning, we find no merit in appellant's claim that his guilty plea was involuntary merely because his fear of the death penalty caused him to accept the District Attorney's plea bargain. We decline to hold that a guilty plea is compelled and invalid whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to the death penalty.[10] The record does not disclose that Scheer was so gripped by fear of the death penalty or the promise of leniency that he did not or could not with the help of counsel rationally weigh the advantages of going to trial against the advantages of pleading guilty. Nor does it appear that the guilty plea was an impulsive and improvident response to a seeming but unreal advantage. On the contrary, Scheer's attorneys advised him correctly that the prosecution's case against him was so strong that there was virtually no chance for an acquittal and that the best result Scheer could obtain by going to trial was a verdict of guilty with a sentence of life imprisonment. Thus it appears that in reality, Scheer gave up practically nothing by pleading guilty and in fact benefitted by not having to face a possible death penalty. In this light, it is apparent that Scheer's agreement with the District Attorney to plead guilty was fair and Scheer's rights were fully protected.

The circumstances of this case do not disclose that Scheer was improperly induced into accepting the plea bargain.[11]

Affirmed.

9. Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970).

10. Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

11. Lesley v. State of Oklahoma, 407 F.2d 543 (10th Cir. 1969); Corn v. State of Oklahoma, 394 F.2d 478 (10th Cir. 1968); Lattin v. Cox, 355 F.2d 397 (10th Cir. 1966).